# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 50821

STATE OF IDAHO,

      Plaintiff-Respondent,

v.

BALDEMAR GOMEZ,

      Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)

Filed:  September 29, 2025

Melanie Gagnepain, Clerk

**THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY**

---

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County.  Hon. Matthew J. Roker, District Judge.

Judgments of conviction for possession of a controlled substance, possession of drug paraphernalia, resisting or obstructing officers, and failure to provide proof of insurance, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Jacob L. Westerfield, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

---

TRIBE, Judge

Baldemar Gomez appeals from his judgments[1] of conviction for possession of a controlled substance, possession of drug paraphernalia, resisting or obstructing officers, and failure to provide proof of insurance.  Gomez argues that the prosecutor committed misconduct during closing arguments.  Gomez also asserts that the district court erred by overruling his objection to the prosecutor's argument and deprived him of a fair trial.  For the reasons set forth below, we affirm.

---

[1]     The district court entered separate judgments for each conviction.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Gomez was pulled over for driving a vehicle with plates that were registered to a different vehicle. During the traffic stop, Officer Peccorini learned that Gomez did not have insurance on the vehicle or a valid driver's license. Officer Peccorini observed a plastic baggie containing a "brownish white substance" on the passenger seat that the officer suspected to be methamphetamine. After failing to follow directions, Gomez was forcefully removed from the vehicle and was arrested under suspicion of drug possession. Officer Peccorini searched Gomez incident to his arrest, and, in the pocket of his hoodie, Officer Peccorini found two baggies referred to as "tear offs"[2] containing white crystal substances. The substances tested presumptive positive for methamphetamine. A second officer, Officer Rohrback, advised Officer Peccorini that a black pouch fell out of the vehicle when Gomez was exiting. The pouch contained a baggie with a white crystal substance which tested presumptive positive for methamphetamine. A further search of the vehicle yielded two glass pipes which Officer Peccorini recognized as paraphernalia used to ingest methamphetamine.

The State charged Gomez with possession of a controlled substance, possession of drug paraphernalia, resisting or obstructing officers, driving without privileges, and failure to provide proof of insurance (second or more offense). The State also alleged that Gomez is a persistent violator of the law.

On the first day of trial, the district court heard several pretrial motions. Gomez advised the district court that the only one tear-off of suspected methamphetamine that was tested at the lab was found inside the black pouch; therefore, Gomez argued any reference to the substances found in his hoodie pocket as methamphetamine would be speculative. Gomez also argued that,

---

[2]     At trial, Officer Peccorini testified:

A tear-off is something that's referred to by police officers, by drug users as a plastic portion of either a Ziploc baggie, a grocery baggie, to where the corner of it is torn off, the substance of whatever it be is put inside of that, and then it's tied off so the substance does not leave. It's basically a make-shift Ziploc, basically. Instead of wasting a whole one to put your drugs in, you just put a small amount in the corner of it.

It is used by those who use and sell drugs to make one plastic baggie, not to store, to be able to sell the product to 10, 15 or 20 people.

2

because the substances in his hoodie pocket were not tested, identifying them as methamphetamine would be irrelevant and confuse the jury. The district court agreed and excluded evidence of the untested methamphetamine found in Gomez's hoodie pocket. The district court clarified that the State could introduce evidence that Gomez was searched and that items were removed from his hoodie pocket but the State could not identify those items as methamphetamine.

During its rebuttal closing argument, the prosecutor said:

> What makes sense here? It's not any doubt. That's impossible. You would have to literally be [Gomez] to know whether he knows it's in the car.
> It's in the pouch on the ground, that that paraphernalia is in his pockets. You would have to be [Gomez] to know beyond any doubt whether he knew that those things were there.
> Now, you are being asked not to believe your lying eyes of--that's a song. It's a thing. You are being asked questions. This wasn't the Meth leprechaun that drops it outside someone's door or puts it in his pocket. Who wears a hoodie and doesn't put their hands in that pocket?

Gomez objected, asserting that the argument was improper based on the district court's pretrial ruling with respect to the untested substance in Gomez's pocket and, as such, the argument included facts not in evidence. The district court overruled Gomez's objection. The jury returned guilty verdicts for possession of a controlled substance (Idaho Code § 37-2732(c)(1)), possession of drug paraphernalia (I.C. § 37-2734(A)(1), resisting or obstructing officers (I.C. § 18-705), and failure to provide proof of insurance (I.C. § 49-1229).[3] Gomez appeals.

## II.

## STANDARD OF REVIEW

Although our system of criminal justice is adversarial in nature, and the prosecutor is expected to be diligent and leave no stone unturned, the prosecutor is nevertheless expected and required to be fair. *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007). However, in reviewing allegations of prosecutorial misconduct we must keep in mind the realities of trial. *Id.* A fair trial is not necessarily a perfect trial. *Id.* When there has been a contemporaneous objection, we determine factually if there was prosecutorial misconduct and then determine whether the error

---

[3] At trial, the district court granted Gomez's Idaho Criminal Rule 29 motion to dismiss the driving without privileges charge due to insufficient evidence; the State dismissed the persistent violator enhancement and did not proceed on the "second or more offense" portion of the failure to provide proof of insurance charge.

was harmless. *Id.*; *State v. Phillips*, 144 Idaho 82, 88, 156 P.3d 583, 589 (Ct. App. 2007). Where a criminal defendant shows a reversible error based on a contemporaneously objected-to constitutional violation, the State then has the burden of demonstrating to the appellate court beyond a reasonable doubt that the constitutional violation did not contribute to the jury's verdict. *State v. Johnson*, 163 Idaho 412, 421, 414 P.3d 234, 243 (2018). A conviction will not be set aside for small errors or defects that have little, if any, likelihood of having changed the results of the trial. *State v. Baker*, 161 Idaho 289, 299, 385 P.3d 467, 477 (Ct. App. 2016).

## III.

## ANALYSIS

Gomez argues that the prosecutor committed objected-to prosecutorial misconduct by stating facts not found in evidence and by violating a pretrial ruling by the district court. Specifically, Gomez argues the prosecutor committed misconduct by implying that methamphetamine was among the items recovered from Gomez's hoodie based on the statement: "This wasn't the Meth leprechaun that drops it outside someone's door or puts it in his pocket. Who wears a hoodie and doesn't put their hands in that pocket?" The State argues that, in the context of the prosecutor's argument, the statement does not amount to prosecutorial misconduct. We agree with the State.

The purpose of the prosecutor's closing argument, not unlike that of the defense in this regard, is to enlighten the jury and to help the jurors remember and interpret the evidence. *State v. Reynolds*, 120 Idaho 445, 450, 816 P.2d 1002, 1007 (Ct. App. 1991). Both sides have traditionally been afforded considerable latitude in closing argument to the jury and are entitled to discuss fully, from their respective standpoints, the evidence and the inferences to be drawn therefrom. *State v. Sheahan,* 139 Idaho 267, 280, 77 P.3d 956, 969 (2003). When the defense objects to the prosecutor's statement, this Court must first evaluate whether the statement was improper. *State v. Severson*, 147 Idaho 694, 716, 215 P.3d 414, 436 (2009). Courts have afforded parties substantial latitude to discuss the evidence and inferences during closing arguments. *Id.* at 720, 215 P.3d at 440. There is no prosecutorial misconduct if the statement was not improper. *Id.* at 716, 215 P.3d at 436.

Gomez argues that the statement "puts it in his pocket" implies that the items found in his pocket are methamphetamine, which the district court ruled was inadmissible. The State argues

that the word "it," as used in the complained-of statement, could be a reference to paraphernalia in light of the prosecutor's preceding statement, "It's in the pouch on the ground, that that paraphernalia is in his pockets." The prosecutor did not present argument that asked the jury to believe that Gomez had methamphetamine in his pocket but, rather, that he had paraphernalia in his pocket--a fact in evidence.

During the hearing prior to trial, the district court ruled that the State could introduce evidence of the baggies found in Gomez's hoodie pocket. Further, at trial, when the prosecutor sought to introduce photos of the baggies from Gomez's hoodie pocket, the district court, during a sidebar, confirmed that the baggies found in Gomez's hoodie pocket were the items charged as drug paraphernalia. Therefore, the statement at issue in context with the surrounding statements shows the prosecutor did not commit misconduct. Rather, the statement could reasonably be understood to refer the jury to the paraphernalia in the form of baggies that were introduced to the jury through testimony of Officer Peccorini and a photograph exhibit. We decline Gomez's invitation to attribute the most damaging meaning to the challenged statement or conclude that the "jury, sitting through lengthy exhortation, [drew] that meaning from the plethora of less damaging interpretations." *Donnelly v. DeChristoforo*, 416 U.S. 637, 647 (1974).

In his reply brief, Gomez asks this Court to view the prosecutor's statement regarding the "Meth leprechaun" in isolation. If we do this, Gomez argues that the "it" in the statement will refer to the subject of that sentence which is the "Meth leprechaun." However, we disagree with Gomez's characterization because if we adopted his logic, and the "it" refers to the subject of the sentence which is "Meth leprechaun," then the sentence would read, "This wasn't the Meth leprechaun that drops the Meth leprechaun outside someone's door or puts the Meth leprechaun in his pocket." Thus, the prosecutor had to be referring to a subject other than the "Meth leprechaun." As the subject "paraphernalia" is in a preceding sentence, it appears the word "it" references the paraphernalia, not the Meth leprechaun. Moreover, Gomez does not cite to any authority showing error when a prosecutor makes a statement during rebuttal closing argument which references a fact in evidence but could potentially be understood in some other way when the statement is read in isolation. Rather, the most obvious reading of the context of the statement demonstrates the prosecutor is referring to methamphetamine in a pouch on the ground and paraphernalia in the

5

pocket. Gomez has failed to show that the district court erred in overruling his objection to the prosecutor's statement during rebuttal closing argument.

## IV.

## CONCLUSION

Gomez has failed to show the district court erred in overruling his objection to the prosecutor's statement during rebuttal closing argument. Gomez's judgments of conviction for possession of a controlled substance, possession of drug paraphernalia, resisting or obstructing officers, and failure to provide proof of insurance are affirmed.

Judge HUSKEY and Judge LORELLO, **CONCUR**.